IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BARBARA G., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 4:24-CV-1125-P-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Plaintiff's appeal of the denial of her application for Social Security disability benefits, Doc. 1, is before the undersigned United States magistrate judge for findings and a recommended disposition.  For the reasons outlined here, the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under the Social Security Act ("Act).  In 2021, Plaintiff filed for DIB alleging a period of disability beginning in April 2020, resulting from arthritis, bone spurs in hip and back, degenerative disc disease, COPD, and asthma.  Doc. 11-1 at 78-79.  Plaintiff's claim was denied at all administrative levels and she now appeals to this Court under 42 U.S.C. § 405(g).  Doc. 1 Doc. 11-1 at 78, 21-35, 5-7.

**B. Factual History**

Plaintiff alleged disability that began in April 2020, due to spine arthritis, visual impairment, asthma, obesity, anxiety, and depression.  Doc. 11-1 at 277-78.  Plaintiff, who was 58 years old at the time of the onset of her alleged disability, has a high school education and past relevant work as a daycare worker, houseworker, and salesclerk.  Doc. 11-1 at 33-34.

*i. Medical Records[1]*

A review of Plaintiff's relevant medical history, dating from 2021 through 2023, reveals reports and diagnoses of complications surrounding arthritis, asthma, depression, diabetes, gout, headache/migraines, insomnia, menopause, and panic attacks.  Doc. 11-2 at 144-50.  The records also reveal Plaintiff reported hip, neck, and back pain, Doc. 11-2 at 110-25, and suffered complications related to severe blurred vision in both eyes.  Doc. 11-2 at 127-29.

*ii. Hearing Testimony*

At the 2023 administrative hearing, Plaintiff testified that she stopped working in April 2020 because the daycare center closed due to the COVID pandemic, but she never tried to return after the center reopened due to her intensified lower back pain.  Doc. 11-1 at 58-59.  According to Plaintiff, when she lies flat, the pain is dull, but if she sits for 1.5 hours or more it becomes constant, then "unbearable."  Doc. 11-1 at 59.  Plaintiff stated that preparing meals is "very difficult," and that when "it starts hurting bad," she lies down and props up her legs.   Doc. 11-1 at 60.  Plaintiff explained that she stopped taking prescription pain medication after losing her insurance, but takes Advil, Tylenol, and Naproxen, which help only "[a] little bit."  Doc. 11-

---

[1] Based on the limited issues raised by Plaintiff, a more expansive summary of the medical records evidence is not warranted.

1 at 60.  Plaintiff also testified that she sometimes has breathing problems brought on by stress, exertion, and "pollutants," and caused by her asthma, COPD, chronic bronchitis, and seasonal allergies.  Doc. 11-1 at 64.  According to Plaintiff, she gets relief from using a rescue inhaler and nebulizer.  Doc. 11-01 at 64.

Plaintiff testified that due to poor vision (none in her left eye, and only 20/80 vision in her right eye), she was unable to maintain her driver's license, sometimes bumps into things, and is unable to see small screens or read print.  Doc. 11-1 at 58, 69-71.  Plaintiff also testified that she is unable to do most household chores and that she watches television and plays games on her iPad during the day.  Doc. 11-1 at 65.  Plaintiff also stated that she stopped going to church because it was "too hard. . . walking from the car to the pews," and that she does not socialize with friends or family outside of her home"—spending holidays alone.  Doc. 11-1 at 66.  Plaintiff stated that she uses a cane provided by a friend to walk, and that "it helps [her] a little bit more because it makes [her] more sturdy, [because she] fell a few times."  Doc. 11-1 at 67.

A vocational expert ("VE") testified that someone with a Residual Functional Capacity[2] (RFC) limited to light work who: (1) can walk or stand for a combined total of four hours in an eight-hour day: (2) can frequently balance, kneel, crouch, crawl and climb ramps and stairs, (3) can occasionally stoop and climb ladders, ropes, and scaffolds; (4) can only occasionally be exposed to pulmonary irritants like fumes, dust, odors, gases, and poor ventilation; and (5) must avoid extreme cold temperatures and exposure to hazards like moving machinery or unprotected heights, could not perform Plaintiff's past work.  Doc. 11-1 at 53-54.  The VE testified further

---

[2] The RFC is "the most [a claimant] can still do despite [the claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

that there was only one job available in significant numbers in the national economy that would result from transferrable skills from a sedentary to light level of exertion with "minimum adjustment" for a person with the same RFC—that of playroom attendant.  Doc. 11-1 at 54-55. According to the VE, the job of playroom attendant under DOT Code 359.677-026, "is a SVP of 3, and is light."[3]  Doc. 11-1 at 55.  The VE further testified that there were presently 22,554 playroom attendant jobs available in the national economy, and that there would be no erosion in the job numbers if Plaintiff had to reduce her total hours of standing or walking to four per workday.  Doc. 11-1 at 56.  However, under cross-examination by Plaintiff's counsel, the VE stated that the job of playroom attendant would not be available for someone "capable of only occasional visual acuity, both near and far."  Doc. 11-1 at 73-74.

### C. The ALJ's Findings

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining if Plaintiff was disabled.  In step one, the ALJ found that Plaintiff met the insured status requirement of the Act on September 30, 2023, and had not engaged in substantial gainful activity since April 1, 2020. Doc. 11-1 at 26.  At step two, the ALJ found that Plaintiff had the severe impairments of (1) lumbar, cervical spine disorders; (2) left hip osteoarthritis; (3) obesity; (4) chronic pain syndrome; (5) asthma; and (6) low vision.  Doc. 11-1 at 26.  However, the ALJ further found that none of Plaintiff's impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations.  Doc. 11-1 at 30.

---

[3] In the Dictionary of Occupational Titles (DOT), "SVP" stands for "Specific Vocational Preparation," and is the scale used to define the amount of time a typical worker needs to prepare to perform a specific job.

At step three, the ALJ found that Plaintiff had the RFC to perform

> light work . . . except the claimant can stand/walk for 4 hours in an 8-hour workday. The claimant must use of cane for over 20 feet or over rough or uneven terrain. She can frequently climb ramps/stairs and occasionally climb ladders, ropes, and scaffolds. The claimant can frequently balance, kneel, crouch, and crawl. She can occasionally stoop. She should avoid extreme cold. She can occasional exposure to pulmonary irritants such as fumes, dust, odors, gases, and poor ventilation. The claimant cannot be exposed to hazards such as dangerous machinery or unprotected heights.

Doc. 11-1 at 31 (errors in original). At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. Doc. 11-1 at 33.

At step five, the ALJ assessed Plaintiff's ability to perform work in the national economy. The ALJ acknowledged that Plaintiff's age placed her in the category of a person of advanced age, specifically, one "closely approaching retirement age," as defined in 20 C.F.R. §§ 404.1563, 416.963. Doc. 11-1 at 33. The ALJ also determined that, based chiefly on vocational expert testimony, Plaintiff acquired vocational skills from her past relevant work as a daycare worker that would be transferable to other occupations in the national economy, including, "serving clients and customers, reading stories, managing children, keeping records, being aware of emergency procedures, and understanding and interpreting written information." Doc. 11-1 at 34. The ALJ noted that these skills would transfer to the work of playroom attendant, for which there are 22,564 jobs nationally. Doc. 11-1 at 34. While Plaintiff's RFC did "not allow [her] to perform the full range of light work," the ALJ determined, "considering [these vocational factors,] a finding of 'not disabled' [was] appropriate under the framework of Medical-Vocational Rule 202.07." Doc. 11-1 at 34.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi,* 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). If the claimant meets her burden, the burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue,* 706 F.3d 600, 602 (5th Cir. 2012). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted). The Court can neither "reweigh the evidence or

6

substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

## III. ANALYSIS

### A. Readily Transferable Skills

Plaintiff contends that, because she is an individual of advanced age under the Social Security regulations, the ALJ failed to sufficiently support his conclusion that other work matching Plaintiff's vocational skills existed in the national economy. Doc. 14 at 4. According to Plaintiff, a finding of disability was warranted unless the evidence demonstrated that she possessed skills "readily transferable to a significant range of semi-skilled or skilled work" within her functional capacity, as set out in section 202.00(c) of the SSA's Medical-Vocational Guidelines. Doc. 14 at 4-5 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 202.00(c))). Upon review, the Court disagrees with Plaintiff's conclusion.

There is no dispute that Plaintiff is an individual of advanced age and is unable to perform her past relevant work. Thus, as Plaintiff correctly states, she qualifies as disabled unless the Commissioner can show she has skills that are "readily transferable to a significant range of semi-skilled or skilled work." 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 202.00(c)).

Plaintiff argues that the ALJ's identification of one occupation—a playroom attendant — failed to demonstrate a significant range of work. Doc. 14 at 4-5. Accordingly, the issue before the Court is whether, as used in § 202.00(c), the term "work" refers to "occupations" or "jobs."

The Court of Appeals for the Fifth Circuit has not addressed this issue, and only two sister circuits have.

In support of her argument, Plaintiff relies on *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006). Doc. 14 at 4-5. In *Lounsburry*, the Ninth Circuit held that the language of section 202.00(c) required multiple occupations. *Lounsburry*, 468 F.3d at 1117. The Ninth Circuit reached this conclusion based primarily on the SSA's equating of the phrase "range of work" with "occupations existing at an exertional level" in Social Security Ruling 83-10. *Lounsburry*, 468 F.3d at 1117. The Ninth Circuit later affirmed this categorical rule in *Maxwell v. Saul*, 971 F.3d 1128 (9th Cir. 2020), holding that even two occupations were insufficient to constitute a significant range of work. *Id.* at 1132.

Although the Fifth Circuit has not commented on the Ninth Circuit's position, several district courts in this circuit have. In *Morris v. Colvin*, No. 4:15-CV-284, 2016 WL 4523238 (E.D. Tex. Aug. 30, 2016) (Mazzant, J.), the plaintiff raised an identical challenge to the language of section 202.00(c). In that case, the court recognized some facial distinction between the "significant range of work" language in section 202.00(c) and the general "significant number of jobs" threshold, which applies to exertional levels other than light work, but nonetheless rejected the plaintiff's challenge. *See id.* at *4-5. The court specifically declined to adopt the Ninth Circuit's categorical requirement of multiple occupations for establishing a significant range of work, noting that several district courts within the Fifth Circuit have rejected such "bright-line standard." *See id.* at *4 (collecting cases); *see also, Camacho v. Bisignano*, No. 7:24-CV-0249, 2025 WL 1870953 (S.D. Tex. June 9, 2025) (Hacker, J.) (declining to adopt the

position of *Loundsburry* and instead focusing its inquiry on the number of jobs not occupations), *adopted by* 2025 WL 1866304 (S.D. Tex. July 7, 2025).

Recently, in *Hamilton v. Comm'r, Soc. Sec. Admin.*, 98 F.4th 800 (6th Cir. 2024) (per curiam), the Sixth Circuit expressly rejected the categorical approach and held that a single occupation with many different types of jobs could constitute a significant range of work as required under section 202.00(c).  The Sixth Circuit rejected the Ninth Circuit's position in *Lounsburry* and undertook a comprehensive examination of the regulatory language of section 202.00(c).  The Sixth Circuit observed, *inter alia*, that the Ninth Circuit did not invoke the "traditional tools of interpretation" in interpreting § 202.00(c).  *Hamilton,* 98 F.4th at 809 (quotation omitted).

After exploring three possible interpretations of the word "work," the Sixth Circuit determined that "work" referred to "jobs," holding:

> [T]he regulatory context leaves no doubt that § 202.00(c) refers to "jobs."  Recall that the Medical Vocational Guidelines help the [SSA] decide whether applicants can perform other work at step five of its evaluation sequence. At that step, the regulatory scheme consistently equates "work" with "jobs"—not "occupations." The scheme expressly uses the word "jobs" as a synonym for the word "work." And it makes clear that "work exists in the national economy" as long as a "significant number of *jobs*" exist—even if all those jobs fall into *"one"* occupation.  Since the [SSA] uses "work" to mean "jobs" in all other regulations discussing step five, the Medical Vocational Guidelines are most naturally read to contain the same meaning.
>
> Other parts of the Medical Vocational Guidelines likewise suggest that the inquiry focuses on the *jobs*—not the *occupations*—that applicants can undertake.  One subsection, for example, notes that the [SSA] will not treat as disabled younger applicants who can perform light unskilled work because these applicants can adjust to "substantial numbers of unskilled *jobs.*"  Another suggests that "illiterate" "younger individuals" who can perform light work are not disabled because they have "the capability for substantial numbers of such *jobs.*"  It would be strange for other subsections within the Medical Vocational Guidelines to turn on an applicant's ability to undertake a substantial number of other *jobs* but for §

> 202.00(c) to turn on the applicant's ability to undertake a substantial number of other *occupations.*
>
> A broader statutory point reinforces this conclusion. If we required proof that applicants could switch to three occupations even if millions of jobs existed in just one of them, we would risk putting this regulation on a collision course with the "plain language of the governing statute." The Social Security Act makes clear that applicants do not qualify as disabled simply because they cannot engage in their "previous work." To qualify as disabled, applicants instead must be unable to "engage in *any other kind* of substantial gainful work which exists in the national economy." [The claimant's] proposed rule—that ALJs should treat applicants as disabled unless they can work across three occupations—likely conflicts with this text. After all, it is hard to see how someone eligible to work at 64,000 jobs across two fields could not engage in "*any* other kind" of work.

*Hamilton*, 98 F.4th at 805-07 (alteration in original) (citations and bracketing omitted).

In the absence of any controlling authority to the contrary, the Court finds the Sixth Circuit's holding well-reasoned and persuasive. An examination of section 202.00(c) compels the conclusion that the term "work" denotes "jobs," and thus a single occupation with many different types of jobs satisfies the "significant range of work." *See also Camacho*, 2025 WL 1870953 at *11 (finding that the persuasiveness of the *Hamilton* decision and "examining the term 'work' through multiple interpretive lenses" supports the conclusion that "work" refers to "jobs" and not "occupation"). Accordingly, the occupation of playroom attendant (which the ALJ determined Plaintiff could perform), with approximately 22,554 jobs in the national economy, constituted a significant range of work as set forth in section 202.00(c) of the Medical Vocational Guidelines.

For these reasons, the undersigned concludes that the ALJ did not err in determining that Plaintiff could adjust to other work for purposes of the SSA's disability determination.

### B. Transferability of Acquired Work Skills

Plaintiff also argues that the ALJ failed to make a required finding about whether Plaintiff had acquired skills that would transfer to a significant number of jobs in the national economy with little, if any, vocational adjustment. Doc. 14 at 7; Doc. 21 at 6. Upon review, the Court finds that this argument also fails.

As stated *supra*, the claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453. Here, the ALJ supported his determination at Step Five by relying upon the testimony of the VE. Doc. 11-1 at 34.

A VE "is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a [VE] is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan*, 58 F.3d at 132. In testifying, a VE can "compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. §§

404.1565, 416.965.  When the transferability of skills is at issue, the ALJ must make certain

findings of fact and include them in his decision.  SSR 82-41, 1982 WL 31389, at *7.  After

identifying the skills a claimant acquired through prior relevant work, the ALJ must make a

determination regarding whether or not those skills are transferable to other occupations.  20

C.F.R. §§ 404.1568(d), 416.968(d).

 Transferability applies only to situations "when the skilled or semi-skilled work activities

[plaintiff] did in past work can be used to meet the requirements of skilled or semi-skilled work

activities of other jobs or kinds of work."  20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1); *see* SSR

82-41, 1982 WL 31389, at *2.  The regulations state that transferability is most probable for jobs

requiring the same or less skill, or jobs which use similar tools, machines, materials, and

processes.  *See* 20 C.F.R. §§ 404.1568(d)(2), 416.968(d)(2).  Because the transferability of a skill

is a determination ultimately made by the ALJ, the VE's testimony must be specific enough to

provide the ALJ with enough information to make an informed decision.  *Muehling v. Colvin*,

No. 2:12-CV-013, 2013 WL 1194078, at *4 (N.D. Tex. Mar. 6, 2013) (Averitte, J.).  For a

finding of transferability of skills to light work for persons of advanced age who are closely

approaching retirement age, as in this case, "there must be very little, if any, vocational

adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R.

Pt. 404, Subpt. P, App. 2, § 202.00(f); *see* SSR 82-41, 1982 WL 31389, at *5;[4] 20 C.F.R. §§

---

[4] The relevant portion of SSR 82-41 states:

c. *Special provisions made for transferability.* To find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry. The same is true for individuals who are 60 and older and are limited to light work exertion. Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs

404.1563(e),[5] 416.963(e).

At the 2023 hearing the ALJ asked the VE, "[w]ould there be any transferable skills to the light or sedentary, unskilled level and, if sedentary, *with no more than minimal vocational adjustment*?" Doc. 11-1 at 54 (emphasis added). The ALJ expounded on this, stating "I realize we're actually in the timeframe now with light [that it must be] no more than minimal vocational adjustment, but there was a period in which that would not apply." Doc. 11-1 at 54. The VE responded that "there would be no transferable skills into sedentary," but that for light work, there would be "one job with minimum adjustment." Doc. 11-1 at 55. Specifically, the VE testified that that one job was "the position of playroom attendant," and that she did not "believe that there would be much of a—of an adjustment. The training, in [the VE's] opinion, would probably be, you know, one to three days, maybe a week. But as far as the type of work or the skills, it's very similar to that of a daycare worker." Doc. 11-1 at 55-56 (errors in original).

Finally, Plaintiff's argument suggesting ALJ erred by failing to use the specific language set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f), that "there must be very little, if any, vocational adjustment required," is also unpersuasive. As a judge of this Court has aptly noted:

---

can be identified which have some degree of similarity with their PRW. In order to establish transferability of skills for such individuals, the semiskilled or skilled duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation. SSR, 82-41, 1982 WL 31389, at *5; *see* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

[5] This section states:
We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). *See* § 404.1568(d)(4). 20 C.F.R. § 404.1563(e); *see* 20 C.F.R. § 416.963(e).

a case will not be remanded in this circuit simply for the reason that the ALJ did not use magic words. Rather, the Fifth Circuit will only remand a case if there is no indication that the ALJ applied the correct legal standard.

In this case, it is clear that the ALJ questioned the VE regarding whether Hogue's skills were transferable "with no more than minimal vocational adjustment," which the Court finds is the same as using the words "with very little vocational adjustment" set forth in section 202.00(f).

*Hogue v. Comm'r, Soc. Sec. Admin.*, No. 3:24-CV-1926, 2025 WL 2232339, at \*6 (N.D. Tex. July 8, 2025) (Cureton, J.), *adopted by* 2025 WL 2223246 (N.D. Tex. Aug. 5, 2025) (cleaned up) (citing *Blair v. Comm'r, Soc. Sec. Admin.*, No. 6:13-CV-345, 2014 WL 5336483, at \*10 (E.D. Tex. Sept. 30, 2014) (Mitchell, J.)); *see also* Sergent v. Astrue, No. 10-cv-1041, 2011 WL 3299051, \*8-\*12 (S.D. Tex. Aug. 1, 2011) (Johnson, J.) (affirming the ALJ's step five finding that the plaintiff who was of advanced age, could perform other work, despite the ALJ not specifically asking the VE whether the plaintiff's skills were "transferrable with little or no vocational training or job orientation").

Moreover, in the instant case, the ALJ's also states in his decision that he considered Plaintiff's "age, education and transferable work skills" and he references the application of Medical–Vocational Rules 202.07. Doc. 11-1 at 34. On this record, the Court finds that the ALJ applied the correct legal standard and satisfied his burden at step five of demonstrating that Plaintiff could perform other work that exists in significant numbers in the national economy. *See Hampton v. Bowen,* 785 F.2d 1308, 1311 (5th Cir. 1986) (observing that the ALJ's written opinion provided "the most convincing evidence that the ALJ had satisfied his burden and applied the correct legal standard" because his opinion stated: "considering [plaintiff's] age, education, and transferable work skills, a finding of 'not disabled' is appropriate.").

14

For the foregoing reasons, the ALJ's decision at Step Five—that Plaintiff had skills from her past relevant work that were transferable with little, if any, vocational adjustment—is supported by substantial evidence.

## IV. CONCLUSION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on March 11, 2026.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

15